IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

RONNIE MYATT                                                                PLAINTIFF

v.                          NO. 3:14-cv-00249 PSH

CAROLYN W. COLVIN, Acting Commissioner                                      DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronnie Myatt ("Myatt") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Myatt maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Myatt so maintains primarily for one reason. He maintains that his residual functional capacity was not properly assessed. It is Myatt's position that the ALJ improperly discounted the opinions of Myatt's treating physician, Dr. Roland Hollis, M.D., ("Hollis") and accorded too much weight to the findings made by two state agency medical consultants.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The record reflects that Hollis saw Myatt on multiple occasions between September of 2011 and April of 2013. See Transcript at 274 (09/30/2011); 273 (10/27/2011); 272 (12/22/2011); 271 (12/29/2011); 270 (01/27/2012); 269 (02/22/2012); 392, 396 (04/20/2012); 395 (06/19/2012); 452 (08/16/2012); 451, 458 (09/13/2012); 456 (10/12/2012); 455 (12/11/2012); 454 (02/08/2013); 461 (04/08/2013). Hollis repeatedly diagnosed, inter alia, hypertension, chronic obstructive pulmonary disorder ("COPD"), degenerative joint disease of the lumbar spine, foot pain, diabetes mellitus, and fatigue.

In February of 2012, Hollis prepared a residual functional capacity questionnaire on Myatt's behalf. See Transcript at 279-280. In the questionnaire, Hollis identified Myatt's symptoms as shortness of breath, fatigue, weakness, pain, and anxiety and opined that his symptoms are severe enough to frequently interfere with the attention and concentration required to perform simple work-related tasks. Hollis represented that Myatt would need to recline or lie down during an eight hour workday in excess of the typical workday breaks. Hollis represented that Myatt can sit for thirty minutes at one time and for a total of five hours in an eight hour workday and can stand/walk for ten minutes at one time and for a total of two hours in an eight hour workday. Hollis represented that Myatt would need a job that permitted shifting positions at will and frequent unscheduled breaks of at least thirty minutes. Hollis additionally represented that Myatt would need to miss work more than four times a month. Hollis completed the questionnaire by representing that Myatt is incapable of working an eight hour day, five days a week on a sustained basis.

In June of 2013, Hollis completed a medical source statement on Myatt's behalf. See Transcript at 463-464. In the statement, Hollis identified Myatt's symptoms as chronic pain, shortness of breath, weakness, and fatigue. Hollis represented that Myatt can lift and/or carry less than ten pounds, can stand and/or walk for thirty minutes at one time and for a total of one hour in an eight hour workday, and can sit for thirty minutes at one time and for a total of three hours in an eight hour workday. Hollis represented that Myatt has a limited ability to push and/or pull, can never climb, and can only occasionally balance, stoop, kneel, crouch, or bend. Hollis additionally represented that Myatt is precluded from working around dust, fumes, or temperature extremes.

In assessing Myatt's residual functional capacity, the ALJ acknowledged Hollis' findings and conclusions contained in his February of 2012 residual functional capacity questionnaire and his June of 2013 medical source statement. See Transcript at 26. The ALJ, though, discounted the findings and conclusions entirely and offered the following reasons for doing so:

> … no weight is assigned to the claimant's treatment provider, Dr. Hollis' finding that due to the claimant's impairments he is unable to perform any significant degree of work, as the undersigned finds that the sweeping allegations of this provider is unfounded. … In fact, the same month that this provider opined the claimant with significant limitations he found the claimant's hypertension and diabetes stable and noted no limitations in terms of the claimant's COPD or foot pain …

See Transcript at 26.

In April of 2012, Dr. Ronald Crow, D.O., ("Crow") reviewed Myatt's medical records at the request of the state agency and completed an assessment of his residual functional capacity. See Transcript at 363-371. Crow rejected the findings and conclusions made by Hollis in his February of 2012 residual functional capacity questionnaire, noting that Hollis' diagnoses "hardly rise to the level of preventing [Myatt] from working." See Transcript at 369. Crow opined that the medical evidence of record "comes close to supporting non-severe," but he gave Myatt the "benefit of the doubt" and assigned him a medium residual functional capacity. See Transcript at 369.

In June of 2012, Dr. Bill Payne, M.D., ("Payne") reviewed Myatt's medical records at the request of the state agency and completed an assessment of his residual functional capacity. See Transcript at 399-406. Payne also rejected the findings and conclusions made by Hollis in his February of 2012 residual functional capacity questionnaire and assigned Myatt a medium residual functional capacity.

In assessing Myatt's residual functional capacity, the ALJ acknowledged Crow and Payne's findings. See Transcript at 26. The ALJ gave Crow and Payne's findings "great weight" because their findings were "persuasive and thorough." See Transcript at 26.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006). A treating physician's medical opinions are not automatically controlling, though, because "the record must be evaluated as a whole." See Id. The ALJ may discount a treating physician's medical opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of his opinion." See Id. (internal quotations omitted). The opinions of a non-treating, non-examining physician are not accorded such weight. See McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011) (opinions of non-treating, non-examining sources generally given less weight than those of treating, examining sources).

The ALJ assessed Myatt's residual functional capacity and found that he is capable of performing light work, although he should avoid concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, and extreme heat and cold. The question for the Court is whether substantial evidence on the record as a whole supports that finding. Although Myatt bears the burden of proving his residual functional capacity, which is admittedly an administrative determination reserved for the ALJ, see Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007), there must be some medical evidence to support the ALJ's finding. On the record now before the Court, it cannot be said that the assessment of Myatt's residual functional capacity is supported by some medical evidence.

The Court begins by observing that the ALJ could find as he did with regard to the findings and conclusions made by Hollis in his February of 2012 residual functional capacity questionnaire and in his June of 2013 medical source statement. Hollis' findings and conclusions are inconsistent with the progress notes he compiled during the course of treating Myatt over an approximately nineteen month period. For instance, Hollis saw Myatt for his hypertension, COPD, and diabetes on the same day Hollis completed his February of 2012 residual functional capacity questionnaire. See Transcript at 269. A fair reading of the progress note from that examination offers little support for the findings and conclusions he offered that same day.

What medical evidence, then, supports the ALJ's assessment of Myatt's residual functional capacity? It appears that the ALJ made his assessment on the basis of Crow and Payne's findings and "the claimant's treatment records." See Transcript at 26.[2] The ALJ's reliance upon that evidence alone was erroneous for two reasons.

First, although Crow and Payne's findings are clearly entitled to some weight, the Court is not persuaded that their findings are entitled to the "great weight" the ALJ gave them. Crow and Payne were consultants who never examined Myatt; they simply summarized his medical records and offered brief assessments of his residual functional capacity. It is not clear how the ALJ could deem their assessments "thorough."

---

[2] The ALJ's assessment also appears to have been based on Myatt's description of his functional restrictions, see Transcript at 26-27, but the Court is not convinced that such evidence is the type of medical evidence envisioned by Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

Second, it appears that the ALJ impermissibly drew his own inferences about the severity of Myatt's impairments from the progress notes in the record, including the notes compiled by Hollis. See Shontos v. Barnhart, 328 F.3d 418 (8th Cir. 2003) (ALJ cannot draw own inferences from records). The Court cannot tell what the ALJ relied upon in the various notes to cause him to find that Myatt is capable of performing a reduced range of light work.

It is for the foregoing reasons that substantial evidence on the record as a whole does not support the ALJ's assessment of Myatt's residual functional capacity. A remand is therefore necessary. Upon remand, the ALJ shall re-assess Myatt's residual functional capacity. As a part of doing so, the ALJ shall re-evaluate the medical evidence and, if necessary, send Myatt for a consultative examination.

The Commissioner's decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Myatt.

IT IS SO ORDERED this 14th day of October, 2015.

_____
UNITED STATES MAGISTRATE JUDGE